Good morning. Our first case on today's docket is the case of Emil Queto v. American Bank Holdings, Inc. and cross-appeal of Emil Queto v. American Bank Holdings, Inc. Two consolidated cases we have. Constantine Trella for the appellant, and we have Mr. Emil Queto for the athlete. You may proceed when you're prepared. May it please the Court. As Your Honor noted, there are two cases consolidated today for argument and decision. The first, 09-0393, is ABHI's American Bank Holdings appeal from the Circuit Court's order denying its Section 214.01 petition with respect to the compensatory damages default judgment. The second appeal, 09-0620, is the direct appeal from the default judgment itself. Now, the procedural posture of the two is slightly different, but the fundamental basic issue is the same. That is, should the default judgment be set aside because it's void or otherwise effective? The answer to that question in both appeals is yes, but before I get into the reasons why that's so, it might be worthwhile to spend a minute or two just reviewing the claim alleged in the complaint. Mr. Queto claims that in June of 2005, a company called United Capital Lending made a loan commitment not to him, but to Lester J. Petty and Associates. Now, Petty, according to the complaint, had agreed to buy some land from Mr. Queto for $8 million. The loan that United Capital was supposed to make to Petty was a pretty remarkable loan, a loan of up to $600 million on a nonrecourse basis and secured by a piece of property that was to be sold for $8 million. If this deal had gone forward, it probably would have been one of the largest real estate loans in history, certainly in Illinois history. But it didn't go forward. Mr. Queto alleges that United Capital reneged on its loan commitment, and he asserts that when it did so, United Capital, as well as its principal and two other entities, United Federal Mortgage and United Medical Bank, were acting as agents and alter egos for my client, ABHI, although the complaint doesn't allege a single fact to support that assertion. And there's no allegation that ABHI itself played any role in the loan transaction. Now, after alleging United Capital's supposed breach of its loan contract with Petty, Mr. Queto goes on to allege that a few weeks later he entered into another contract to sell the same land, this time for $9 million, and this time in a transaction to be financed by Oracle Capital, which is not alleged to have had any connection at all to either to United Capital or to any of the other supposed agents or alter egos of ABHI. Now, that deal, like its predecessor, also fell through. And Mr. Queto alleges that as a result of that breach by Oracle, he was forced to sell his property at a loss and suffered damages. Now, the claim alleged in the complaint is implausible. It's unsupported by well-pleaded facts, and it's internally inconsistent. But what matters for present purposes is that even if you take the allegations at face value, the claim has no connection to ABHI, making the default judgment based on that complaint void for lack of personal jurisdiction and for failure to state any claim at all against ABHI. Now, the most fundamental problem is the lack of personal jurisdiction. As the Maryland court found in Mr. Queto's enforcement action, ABHI is not subject to personal jurisdiction in Illinois. It's a Delaware corporation with its principal place of business in Maryland. The complaint alleges no facts showing that ABHI conducts business here, owns property here, or maintains an office or has employees here. ABHI submitted affidavits in the circuit court establishing that it had none of those connections to Illinois, and Mr. Queto did not controvert any of those facts. Indeed, he conceded in the circuit court at the May 12th hearing that he was not contending that ABHI was doing business in Illinois. So ABHI, I think it's undisputed, is not subject to general personal jurisdiction in Illinois. The theory, instead, is a specific jurisdiction theory, and Mr. Queto claims that ABHI is subject to personal jurisdiction here because of its involvement in the supposed petty loan transaction. But the complaint, as I noted, does not allege that ABHI itself played any role in that transaction. So Mr. Queto relies on a series of supposed connections among supposed agents and alter egos of ABHI. But the complaint itself doesn't allege any of that either, so Mr. Queto tried to remedy that fatal defect by submitting an affidavit to show these supposed connections. But not one of the links in this chain of connections that he's constructed can withstand scrutiny. The first link is a supposed connection between United Capital, the company that supposedly breached the loan commitment, and a company called United Federal Mortgage. Mr. Queto claims that United Federal Mortgage is the same entity as United Capital. The entire basis for that claim is an unauthenticated website printout that shows a mailing address and phone number for United Federal Mortgage that are the same as the address and phone number that appear on the loan commitment that was supposedly made to Lester Petty & Associates. Now, apart from the lack of any admissible non-hearsay evidence of the address and phone number, the fact that two companies share an address and phone number, even if you assume it's true, does not show that they're the same entity or that one is responsible for the acts or liabilities of the other. And in that regard, I direct the Court's attention to the Flight Kitchen v. 7Up case that's discussed in the briefs. There, not only do two companies share the same address, they also have the same president, and on at least one occasion, one company actually paid a debt that was owed by the other. In the 2-1401 proceeding, did ABHI present an affidavit or any evidence that the two companies are not the same entity? That United Capital and United Federal Mortgage are not? Well, what United – I'm sorry, what ABHI – I mean, I understand you're contesting the basis for the claim, but is there proof anywhere from somebody that they're not? No, what we have is the absence of any proof that they are. In fact, what ABHI's affidavit said is we never heard of United Capital Lending and United Federal Mortgage isn't connected with us either. So it's actually – ABHI was not in a position to establish the lack of connection between the two. Okay, so really you were attacking the further links down the chain? Well, we're attacking this first link because there's no evidence showing that they're the same. You know, they have the same – even accepting Mr. Quito's evidence, all we know is that at one time they shared an address and phone number, and the case law is very clear that sharing an address, even sharing corporate officers, does not make one company the alter ego of the other or an agent for the other. The only reason I'm asking is – and my point is you're attacking it for lack of proof, but you offered no proof that they're not the same entity. Right, on that point, that's correct, Your Honor. Okay. But as I mentioned, in the Flight Kitchen case the court held that, you know, the same address doesn't mean anything. The same thing was true in the Old Rorschach v. Harry Rosen case, which is also discussed in the briefs. There you had companies that were admittedly affiliates. We don't even know that about United Capital and United Federal Mortgage, incidentally. They were definitely affiliates. They had the same headquarters. They had overlapping officers and directors. But that still wasn't enough to make one the alter ego of the other or responsible for the liabilities of the other. Mr. Quito has far less than that here, since there's no evidence of any connection between United Capital and United Federal Mortgage other than the address and phone number. So without that first link, the rest of the chain evaporates or is irrelevant. But let's look at the next link in the chain, and that is an allegation that United Federal Mortgage was the same entity as American Bank. Now, that supposed connection rests entirely on another unauthenticated website printout. This one is dated March of 2008, which is three years after the relevant events, and it appears to be from a site operated by something called eMortgageCorp, not American Bank or ABHI. It's supposedly about American Bank Mortgage Group, which is said to be a division of American Bank, which is itself said to be formerly United Federal Mortgage. Now, even, again, putting the evidentiary deficiencies, the hearsay, and other problems to one side, a corporation is liable for the liabilities and is responsible for the liabilities of a former company only where it merged with that company under Illinois law. If all it did was buy assets, there's no successor liability. Mr. Quito presented no evidence that American Bank merged with United Federal Mortgage. To the contrary, he actually presented evidence that if there was any connection, it was a simple purchase of some assets from United Federal Mortgage. And on that point, in fact, American ABHI did present evidence that it has no connection to United Federal Mortgage and it's not a subsidiary or affiliate. Maybe in the plaque affidavit. The plaque affidavit, yes, Your Honor. So, again, even if United Federal was responsible for the acts of United Capital Lending and it's not, that has nothing to do with American Bank. So that takes us to the third link in the chain, and that's Mr. Quito's assertion that American Bank is the same as ABHI. ABHI is a bank holding company. It's not a bank. It doesn't lend money, and it's required by federal law to be a separate corporate entity from any banks that it may have ownership interests in. What Mr. Quito is asking this Court to do is essentially to ignore the separate corporate identities of the two companies. But Illinois law is very clear that in the absence of evidence that would justify piercing the corporate veil, you don't just ignore separate corporate identities. Corporate identities are to be respected, and in particular parent companies are not responsible for the liabilities of their subsidiaries, even wholly owned subsidiaries. And this principle has been applied with full force in the context of personal jurisdiction. It's well established that even where a court has personal jurisdiction over a subsidiary, that does not give it jurisdiction over the parent. Mr. Quito presented no evidence that would justify ignoring the separate corporate identities of American Bank and ABHI, and ABHI presented evidence that, in fact, they are separate corporate entities. So even if the rest of Mr. Quito's chain, even if the rest of those links in his chain were real and they're not, the last link is completely nonexistent. So now, as the Maryland Court found, and Mr. Quito did not appeal in that case, ABHI had no connection to the petty transactions, no connection to United Capital Lending or United Federal Mortgage, and no connection to Illinois. In light of all that, it's small wonder that Judge Gleeson, even after he entered the default judgment, said that he was nonetheless troubled by the personal jurisdiction issue. Personal jurisdiction, in fact, did not exist in this case, and the default judgment is therefore void. Now, let me spend just a minute, if I may, on the Maryland case. That's a case Mr. Quito initiated in order to try to enforce the default judgments. He enrolled the judgments in two Maryland courts. Now, the Maryland court, one of the Maryland courts, after an evidentiary hearing of which Mr. Quito had noticed and in which he did not participate, found basically all the facts that I just cited, that ABHI had no connection to Illinois, to the petty loan, or to any of the other entities named as defendants in Mr. Quito's complaint. And on that basis, the court found that there was no personal jurisdiction over ABHI in Illinois, and so it vacated the enrolled judgments. Mr. Quito filed a motion to set that decision aside in the Maryland court and trotted out his story about how the judge's secretary had lied to him about whether there would be a hearing and about how court records had been falsified and how the fix had been put in for ABHI. His motion was denied and he did not appeal. That is the final decision between the same parties on the same issue presented in these proceedings, and we submit it's entitled to preclusive effect. Now, that argument's made in your appeal in 5-09-0620. Correct. I want to make sure I understand your jurisdictional basis for that appeal. Okay? There was an argument on a stay motion. Yes. And during that argument on the stay motion, and I'm looking at page 23 of the transcript, there was some back and forth about whether there was a final appealable order, and Judge Gleeson said, I think I have a final and appealable order. Yes. Okay, I'm going to quote here. It says, all right, I've heard argument. I think I have a final and appealable order, but ask that we move on to the next portion of this, which is the stay. That's your basis for claiming that Judge Gleeson made a 304 finding, that even though there are other parties and claims in the case, that made it appealable? No, the theory is a little different than that. Okay, that's what I'm wanting to get at. I mean, there was no written order, though. No, clearly there was no written order. Okay, explain that to me, and I realize this Court has denied the motion to dismiss for lack of jurisdiction, but it's raised again in the brief. Sure, sure. No, I have to address that, Your Honor, and I think we need to take a step back to the time of the entry of the default judgments. So in July 23, 2008, three default judgments were entered against ABHI. There were ten other defendants in the case, and all the claims against them were still pending. On July 30th, Mr. Quito filed some motions to dismiss. On his motions, the Circuit Court dismissed all the claims against six of the ten defendants, three Wells Fargo entities, Oracle Capital, a woman named Lana Carter, and Lester J. Petty & Associates. Now, those were two separate orders. That left claims pending against four defendants other than ABHI, United Capital, United Federal Mortgage, United Medical Bank, and Kevin Glee. Now, the Circuit Court then entered another order on July 30th, and that order dismissed, and I'm quoting, certain defendants not including American Bank Holdings, Inc., and not including any corporate alter egos or merged or acquired corporations or agents of American Bank Holdings, Inc. And the motion to dismiss, which this order was in response to, identified United Federal Mortgage as a corporate alter ego and identified United Capital, United Medical Bank, and Gleaton as agents of ABHI. So by its terms, that July 30th order did not dismiss all claims against those four defendants. It says dismissed against everybody except these. And it's your position that because there were other parties and defendants and claims, that was not a final and appealable judgment? Correct, Your Honor. So for that to become a final and appealable judgment, the judge had to make the finding required by 304A? Well, I think what he had to do was he had to dismiss the remaining claims. Well, he either had to do that or make the finding. Right. I'm sorry if we weren't clear. We don't say that he made the 304A findings. Okay. What we're saying is that his statement on October 19th of 2009, the only reasonable interpretation of it is as a dismissal of those claims that were still left pending. And the statement you're talking about is the one I read? Yes, Your Honor. That's correct. He doesn't say, okay, I'm dismissing these other claims.  You're absolutely right, Your Honor. So we have to somehow interpret this ambiguous statement. Yes. I fully concede that the record on this is not a model of clarity, but we think the more reasonable interpretation is that he was dismissing them because otherwise the statement is just wrong because he did not have a final and appealable order unless he dismissed them. So it's a de facto dismissal? I'm sorry, Your Honor. Is it like a de facto dismissal? Well, I don't think we put it that way, but I think that's a fair way to put it. It's, you know, I think he was saying, and again, there's some interpretation here by all means, but I think our interpretation is he was saying, well, if I didn't dismiss them before, that's what I'm doing now. And so at that point, the default judgment became final and appealable. Just to make sure we all understand, that's the sole basis for your claim for jurisdiction in that appeal? In the 0620 appeal, yes, Your Honor. Now, I realize there's a lot of overlap. Yeah, the fundamental issues I think are the same, and none of this has anything to do with the 0393 appeal because the 214.01 petition ruling is independently appealable, as you know.  Judge Gleeson, in addition to finding long-arm jurisdiction, also found that ABHI had waived its objection to personal jurisdiction because it filed a section 214.01 petition rather than filing a motion to dismiss or quash. Now, Mr. Quito doesn't even attempt in his breach to defend that reasoning, and it's clearly wrong. The case law is very clear that the proper way to challenge a default judgment for lack of personal jurisdiction is to do exactly what ABHI did here. They filed a petition under 214.01. The Supreme Court made that clear in Sarkissian, and the various districts of the appellate court have uniformly agreed. Indeed, not only is a section 214.01 petition a permissible way to challenge default to raise a personal jurisdiction objection to a default judgment, it's really the only way. Both the Supreme Court and the appellate court have held that an attack on a void judgment is, by definition, a section 214.01 petition, whether or not that's what you've called it, and whether or not you even cite that statutory section. So even if ABHI had called its initial pleading a motion to dismiss or quash, which Judge Gleeson apparently thought was required, it would have, as a matter of law, been treated as a 214.01 petition anyway. So Judge Gleeson's waiver reasoning is legally wrong. Now, instead of defending that actual reasoning, Mr. Quito argues that ABHI waived an objection to personal jurisdiction because it filed a motion for stay before filing the petition under 214.01, and that's dispassionately wrong. The petition under 214.01 was filed first. The motion for stay was filed second. And, in fact, Judge Gleeson, in a consent order on March 10, 2009, granting the stay, filed that the petition was filed first, and that's at 364 to 65 of the common law record in the 0393 case. One minute difference. One minute difference, yes, Your Honor. And that's shown on the face of the pleadings. Yes. In other words, I guess the St. Clair County Circuit Clerk's stamp shows the time of filing. The time was written in the clerk's office, yes, Your Honor. Was written in? Yes. Okay. Right. By the clerk? By the clerk. Okay. And also, in that order that I just cited, Judge Gleeson recites that, in fact, the petition was filed before the motion for stay. So there's no factual basis for any waiver claim. I know I'm almost out of time, but what I would like to touch on just briefly is, in addition to being void for lack of personal jurisdiction, the default judgment is also void because it entirely fails to state a claim against ABHI, and that, like personal jurisdiction, is an issue that can be raised regardless of due diligence or the other requirements under 214-01. As I noted, there are no allegations that ABHI itself did anything. Its link to all of this is through the supposed chain of agents and alter egos. There are no factual allegations supporting the agent or alter ego claim, and as the Supreme Court held in the Connick v. Suzuki case, saying that somebody is an agent is asserting a legal conclusion. You have to have alleged facts to support that, and there are none. Moreover, there's really no claim stated even against the supposed agents or alter egos. The loan commitment on its face said it was not an enforceable commitment. It hadn't been executed. And, in fact, the cover note that Lester Petty sent to Mr. Quito said it hadn't been accepted. And, moreover, it was Petty that sent it to Mr. Quito, not ABHI or any supposed agent. Mr. Quito also points to a July 1, 2005 letter that he says he was sent directly, but his complaint alleges that that letter was sent by Wells Fargo, not by ABHI or any alleged agent or alter ego of ABHI. And also there's a problem with proximate cause because he claims it's breached by United Capital, which he attributes to ABHI. But then he says several weeks later he had a different contract to sell the property for more money, and that it was that breach, and he alleges this, that it was that breach that forced him to sell the property at a loss. And I also note that actually his damages calculation is based on that second transaction because it's the difference between his $7.4 million in judgment is the difference between the amount he sold the property for and the $9 million he was supposed to get in the Oracle deal, not the $8 million he was supposed to get in the United Capital deal. So no complaint alleges, shows no proximate cause. Thank you, Your Honor. Thank you, Mr. Carroll. You'll have the opportunity for rebuttal. Thank you. Mr. Quito. May it please the Court. Your Honors, I have Ray Chatham, a lawyer from Belleville, here to assist me this morning. I have some illustrations from the evidence that I would, if my time allows and if the opportunity allows, that I would like to use to illustrate part of my argument to the Court. Certainly. I showed them to counsel before the argument so that there's no disagreement as to what they are. As I said, may it please the Court. May it please the Court. I haven't done this in a while. I'm not sure where to begin. I think I should maybe address the last part of Mr. Trilla's argument first. And that is that he argued a lot about what the facts of the case are, what facts are alleged in the complaint, issues like proximate cause and so forth. And my first point is that I will leave it to the Court as to what the effect of the default was. He barely mentioned the default. But the way I read the cases, virtually all of that that he mentioned is weight. The issues of proximate cause or whether the complaint states the cause of action, that could have all been challenged by ADHI in the underlying case if they would have responded, if the bank would have responded to the complaint. There's no question about the fact, at least in Illinois, there's no question about the fact that ADHI would serve the process through its registered agent, CT Corporation. Mr. Platt admitted that in the first affidavit, I think paragraph 18 of the first affidavit, that the registered agent for service process in Baltimore, Maryland, would serve and that CT Corporation delivered the process to the main offices of ADHI on June 19, 2008. Now, later, in an attempt to obscure the relationship between ADHI and American Bank and these other North Carolina entities that Mr. Trella mentioned, there is a lot of ambiguous allegations as to what, for example, what American Bank's address was, what ADHI's address was, and as Mr. Trella claims, that they occupy the same address, but maybe it's not the same, he doesn't say maybe, he says it's not the same corporation. I would like to focus on the evidence that was before the St. Clair County Trial Court in the underlying case. The evidence is undisputed, uncontradicted, that ADHI and American Bank are the same bank. That comes from ADHI's comptroller, David Blasak. Now, among the other facts that Mr., at least parts of the case that Mr. Trella didn't discuss, is the fact that, if I may, may I use the first illustration for the court, and that's the timeline, you ready? All right. Is there any way to move that closer? We're able to see that. I don't know if the court can see it or not. Well, barely. I think you can if you kind of read it. If you can explain it, parse it out there. This is the timeline that's excerpted from my brief, and we put the clash together. The first point is that I filed a complaint on June 11th. On June 18th, ADHI was served through CT Corporation, no doubt about that. On June 19th, according to this, according to the affidavit of Mr. Platt, who was the CEO of ADHI, he's also an officer in American Bank. The CT Corporation delivered my lawsuit to the ADHI's main office. That comes from the Platt affidavit, that it was ADHI's main office. It's at 901 Edmondson in Greenbelt, Maryland, I believe is the address. Now, the second point that Mr. Trella did discuss is what occurred afterwards. Mr. Trella, you're welcome to get up if you want to be closer to viewing this. Oh, thank you. Mr. Trella, just show us these. Okay. That's good. Great, give me that easel over there. I could use this easel. Now, as my brief explained, these documents, this document here that I'm referring to, it's page 27 in my appendix. This document was received by me on November 5th of 2009, in fact, it was after the initial brief in the first appeal, 30393, was filed by ADHI. And I received this because the insurance companies, part of the bank, had filed a declaratory judgment action in Maryland. The Southern did as well. I think it's the number one federal district in Maryland for declaratory judgment. And they also named me in the lawsuit. And so I received documents in discovery between the bank and the St. Paul Insurance Company, but I didn't receive them in production until November 5th of 2009. I filed them in a motion to dismiss in this court. However, the documents were not part of the record. I hadn't made them part of the record before the trial court or this court, although now they are. I made a motion to supplement the record in the trial court and in this court. Both courts granted. The trial court and this court granted my motion. And so they're part of the record before this court. What this says, and the court will help the court to read it, is that CT Corporation confirmed that John Wright, that was the person who CT Corporation had addressed it to at the bank, was listed as the contact person for American Bank Holdings Incorporated. Now, John Wright was the chief financial officer of American Bank, according to the affidavit of Mr. Platt. But you can work and see what happens here. Also, CT Corporation also confirmed that the address on file at CT Corporation was the Edmondson Road address, the same address that was 901, was the main address, according to Mr. Platt's affidavit, where the process was served. And so the court can see what happened here. The American Bank Holdings used American Bank, at least to handle the lawsuit or the protocol for the lawsuit. And, in fact, this document also says that the protocol, and that's the word that was used, is that what they do with these papers, the lawsuit papers, after they receive them, would be submitted to the successor, for Mr. Wright, who had left the bank's employment. That person was, according to the top part of this, was a person named Gregory DeArthur. Let me ask you a question, Mr. Quito. Let's assume ABHI and American Bank have their office at the same address. Let's assume that they have overlapping officers and directors. That doesn't prevent them from being two separate corporate entities, does it? No, sir, it does not. And it doesn't prove that they're the same corporate entity, on the other hand, either, does it? That in itself does not. But the evidence before the trial court was that David Blazak was the comptroller of American Bank Holdings. He's the one who said that they were the same bank. Well, that was your testimony based on a telephone conversation with David Blazak. Correct. And arguably as an admission on behalf of the corporation. Yes, sir. But if David Blazak got on the witness stand and said they're the same corporation, does that prove they are? I think it does, unless it's contradicted. If it's uncontradicted evidence, and certainly they behave as if it's the same thing. In fact, if you look at Mr. Plax's affidavits, he frequently refers to the bank, or in the other documents he refers to the bank as being either ABHI or American Bank. And, in fact, this is the D'Arco Memorandum, and that's what the protocol is. It was that he received my complaint in summons. The inference, at least, is that he received it on or about June 19, 2008, when the bank received these documents. And you can see that on July 25, 2008, he sends it to a lawyer outside counsel named Richard Fine. In Mr. Plax's first affidavit, he said that Mr. Fine was the outside counsel for American Bank Holdings Bank. In the second affidavit he filed on June 15 or July 15, 2008, Mr. Plax said, in the first affidavit, that Mr. Fine was not ABHI's lawyer. The question I would have is, why is he being sent these documents? In fact, Mr. D'Arco says that he didn't follow up on the case, and he's their vice president for risk management, because he thought the lawyers handled it. That's what he says in the first memo, that Ms. Cassandra Wallace, the vice president, and I think she was the vice president of American Bank, and I assume that she has the same role with ABHI. But the point that I'm trying to make is that they treated this lawsuit the same way that they treated their operation, all as if it's the same bank. Now, the default that they, by the way, this is on July 25th. There's no doubt about the fact, it's in the evidence before the trial court, that on July 29th, the St. Clair County clerk sent another letter, pardon me if I bleed on the podium, Your Honor. That's okay. But on July 29th of 2008, CT Corporation received another pack of the documents from the St. Clair County clerk. I argued at the evidentiary hearing on May 12th of 2009 that the, because by the way, the bank claims that it lost the documents that it received on July 29th, that under IPI 501 the trial court could draw a negative inference as to the, when a corporation like American Bank, which keeps meticulous records in virtually every other thing that they did, that suddenly they lost them, that the inference, the only inference there was that this was sent just a few days after the defaults were entered and that those defaults were sent to American Bank. But regardless of whether the defaults were there or not, and the trial court made a finding that the bank had notice of the default, certainly the banks on constructive notice, they were served on June 18th. They received it on June 19th. On June 25th, it's being discussed by Mr. Fine and Mr. DiArco. And then they received another set of documents on June 29th. One would think that they would at least, that they had a duty under the Illinois law to pay attention to the case and to follow up on the case. But the bank didn't do anything. Now, on September 9th, they received a second package of documents from the St. Clair County clerk. They lost those, too. They make some claims about what they were, but we don't know because they can't find them. There is no doubt about the fact, and the bank has never contested this, that on September 16th, Mr. Blazak called my office, my brother's office, to inquire about the status of the case. And then he called again on September 17th. I filed an affidavit to that effect on December 18th, 2008. All this time, we haven't heard anything, no pleadings anyway, or papers from the bank. So in my affidavit on December 18th, I spelled Mr. Blazak's name. I grew up with a lot of Blazaks, and he said, I spelled it phonetically, or the way every Blazak I knew spelled it, B-L-A-Z-A-K. Now, here's what the next would be. I want to make this point while I still have time. In February, we heard from the first time for the bank. It is true that my lawyers who were assisting me in the collection was Laura Grandy and George Moriffian, his law firm. They sent notice to the Maryland courts that we were going to try to enforce the judgment, but they never entered their appearance in any Maryland court. They never filed any pleadings in the Maryland court. I never received any notice or any process from any Maryland court. Other than giving notice to the court and to the clerk's office and, again, to the banking through CT Corporation, that's all we did. I didn't ever attempt any collection. My lawyers never attempted any collection in Maryland or tried to enforce the judgments in Maryland. But, now, it's important, I think, to make this distinction, too, that Mr. Trella didn't mention. A 2-1401, I mean, we can disagree about facts and inferences, but I don't think we can disagree about what the law is on the old Section 72 petition and 2-1401. That is a separate lawsuit. It's a, and I quote Ostendorf in my brief, Ostendorf versus International Harvester. It is filed in the same case under the same style, but I think the court, if I'm quoting it correctly, the Illinois Supreme Court says that, in fact, it is a separate lawsuit. Now, regardless of what they filed first in time on whatever day they filed it, February 24th or 26th or whatever day it was, it doesn't make any difference because the 2-1401 was a separate case. But in the underlying case, in the default judgment case, there's no doubt about the fact that ABHA filed what they styled as a motion to stay, enforcement of the judgment. And that was filed in the underlying case. Now, it was not a motion to quash and it was not a motion to dismiss. And under 2-301 of the Civil Practice Act, the bank waived any claim of jurisdiction, personal jurisdiction, that it had because the first motion has to be one or two of the others. And let me also say while I'm on the point, that sounds a little bit disjointed, but the cases that they quote are personal jurisdiction like Sarkissian. The cases that they cite are the cases where the defendant was never served with any process at all. That's what happened in Sarkissian. I think that was against the Board of Education in Chicago. And for seven years, the defendant had never been served. So, of course, any judgment taken after that is void. In our case, in the case of Barr, there's no doubt about the fact that the service, at least in Illinois, that the service and process was done correctly. They did argue in Maryland, from what I could see of their pleadings, that I served the wrong company. And by the way, this is an excerpt from the letter that was sent by the bank. And I put part of page one and page two together. That was sent by the bank to their insurance company, Cannon & Lux, the broker, trying to get coverage. Now, this is what they argued, from what I can see from the Maryland documents, which, by the way, were never seen by any St. Clair County trial court. They were never introduced to any evidence. No foundation was ever laid for them. Nobody ever even identified them. There's no evidence before the trial court, or even, for that matter, even before this court, as to who authenticated them or whether or not they're accurate or true and accurate. I say they're not. But their argument was, as you can see from their letter, that they say, on June 18, 2008, the amnioacoital complaint was improperly served on American bank holdings, as it was addressed to the bank's pharma CFO. That's not true. No matter how you look at it, none of these pleadings were all done ex parte, without notice to me. I was never served on any process. In fact, the way this worked was, in June, July, we were supposed to have a hearing on Monday, I think July 14, 2009, and Mr. Nestor, the counsel for the other side, told me that counsel from Sidley Austin couldn't be there because they were going to enter their appearance. And I said, that's all right. We'll just kick it back until, I think, the 16th. But in any event, it turned out that on that day and on the next day and on the third day that Mr. Feinemann from Sidley Austin was in Maryland now. Okay. That concludes our time. Thank you. Thank you. We have the briefs and records. Mr. Trella, you have the opportunity, if you want to wait until things are clear. Thank you. Thank you, Your Honor. Much of what Mr. Quito just talked about has nothing to do with the main issues in the case. All this business about calls from David Blazak, and we don't dispute that the complaint was served on CT Corporation as ABHI's agent, and through a series of unfortunate mistakes, it wasn't handled properly. But all of that goes, if it goes to anything, it goes to the question of due diligence. And due diligence is completely irrelevant to the two main issues, which are, was there personal jurisdiction, and does the complaint entirely fail to state a cause of action? The law is very clear that in both of those instances, the judgment is void, and a void judgment can be attacked at any time in any court without regard for due diligence or any other requirements that attach to other kinds of Section 214.01 petitions. So although we dispute most, if not all, of the facts that Mr. Quito was talking about, none of them have anything to do with that issue. Now, he, near the end of his time, Mr. Quito articulated a version of his waiver theory that I think I had not quite appreciated before, and that was that the petition wasn't that filed first, but it started a new case, and the motion for stay was somehow filed in a different case, in the old case, and because that motion was the first motion filed in that case, it somehow was a waiver. That doesn't make any sense. Both petitions were filed in the same case. They were identically captioned. The petition was filed first. The motion for stay was filed immediately afterwards. In fact, it doesn't make any sense to say that the petition started a new case and the motion was filed in the other, in some other case. The circuit court lost jurisdiction over the so-called old case 30 days after the default judgments were entered, and so no motions could be filed or acted upon. But wait a minute. That's if it's a final judgment. Well, if that's it, yeah.  That's putting aside the jurisdictional issue of the other appeal, Your Honor. Correct, correct. Okay, just going to make that point. No, and that's a very fair point. So everything filed after the petition was filed was filed in the same case, whether you call it the new case or the old case. And, in fact, as I noted before, the circuit court, in fact, in an order with a single caption in one case, found that the petition was filed before the motion for stay. And, in fact, if you think about it, if the law were otherwise, then any time somebody filed a Section 214.01 petition and then filed another paper, you'd have a waiver situation because of this new case, old case distinction that Mr. Quito has constructed. Now, and moreover, as a legal matter, when a party submits to a court's jurisdiction, whether it's by way of waiver or by intentionally filing a general appearance, that cannot retroactively validate a prior judgment that was entered without jurisdiction. For example, in the mortgage electronic systems case, which is discussed in the briefs, the First District held that a Section 72 petition, which was the predecessor to 214.01, that asserted only merits defenses acted as a general appearance and therefore subjected the petitioner to the court's jurisdiction, but only prospectively, and it could not serve to validate a previously entered default judgment when personal jurisdiction had not existed at that time. So even if you accept everything that Mr. Quito says about the motion for state and all that, it has no impact on the June 2008 void default judgments. Now, he also talked about the default somehow waives these arguments about proximate cause and all that, but that's clearly not correct because, again, a default judgment that's based on a complaint that entirely fails to state a claim is void, and that can be attacked at any time, regardless of due diligence or waiver or anything like that. So that does not hold any water. Now, the David Blazak business, and Your Honor asked a couple of questions about that. The evidence is undisputed that Blazak is an employee of American Bank, not ABHI. The plaque affidavit would have shown a little more candor if that would have been explained, wouldn't it? Well, I like what David said, and I think, frankly, Mr. Quito unfairly characterizes that. The point of the plaque affidavit was not that he misspelled Blazak's name. I mean, Mr. Plaque's affidavit says David Blazak is not and never has been an employee of ABHI. It didn't go on to say he's the comptroller of American Bank and his name is spelled this way. I mean, that would have given a lot more information to the court, don't you think? It would have given him more information, and it would have knocked about 10 pages out of the briefs and would have saved time today. I completely agree, Your Honor. If we were doing it again, we would add that sentence, certainly. But the fact remains that he's an employee of American Bank, and to answer the question that you asked, Mr. Quito, if he got on the witness stand and said they're the same bank, that has no impact on ABHI because he cannot bind ABHI. It assumes the conclusion to say that his speech binds ABHI. With that, thank you very much. Thank you, Your Honors. Thank you, Mr. Torello. Thank you, Mr. Quito, gentlemen. We'll take the matter as is. Goodbye.